IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| CAMERON L. MARSHALL, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>ISMIE MUTUAL INSURANCE COMPANY, )<br>)<br>Defendant. )<br>_____) | No. 2:24-cv-00223-DCN<br><br>**ORDER** |

This matter is before the court on defendant ISMIE Mutual Insurance Company's ("ISMIE") motion for judgment on the pleadings, ECF No. 11, and motion for leave to file, ECF No. 28. For the reasons set forth below, the court grants ISMIE's motion for leave to file and denies its motion for judgment on the pleadings.

**I.  BACKGROUND**

In this insurance coverage dispute, plaintiff Cameron L. Marshall ("Marshall") alleges that ISMIE is obligated to defend and indemnify him for allegations of attorney malpractice in an underlying suit. See generally ECF No. 1, Compl. Before delving into the coverage issue, the court will start by providing background on the events giving rise to the underlying malpractice claim.

**A.  The ATMES Suit**

On October 31, 2011, Assistive Technology Medical Equipment Services, Inc. ("ATMES") filed a lawsuit against several defendants, including Phillip DeClemente ("DeClemente"), in the Charleston County Court of Common Pleas (the "ATMES Suit"). ECF Nos. 8, ISMIE's Countercl. ¶ 7; 10, Marshall's Answer ¶ 4; 8-1; Assistive Tech. Med. Equip. Servs., Inc. v. Hood & Selander, CPAS, LLC, No. 2011-CP-10-08011

1

(Charleston Cnty. Ct. C.P. Oct. 31, 2011). On March 30, 2012, ATMES's attorney filed an affidavit of default, in which he averred that more than thirty days had elapsed since ATMES had served DeClemente and DeClemente had yet to file a notice of appearance, answer, motion to dismiss, or any other such document. ECF No. 8-2 at 1. ATMES therefore requested that the court hold DeClemente in default and schedule a hearing on damages. Id. at 1–2.

On May 9, 2012—about a month and a half after ATMES filed its affidavit of default but before the court held a hearing on the issue—DeClemente hired Marshall to represent him in the ATMES Suit, and the two entered an attorney/client relationship. ISMIE's Countercl. ¶ 9; Marshall's Amend. Answer ¶ 5. Marshall then filed a notice of appearance in the ATMES Suit on May 14, 2012. ISMIE's Countercl. ¶ 10 Marshall's Amend. Answer ¶ 5. Yet Marshall did not file anything further in the ATMES Suit until August 10, 2012. See ISMIE's Countercl. ¶¶ 11, 12; Marshall's Amend. Answer ¶¶ 6, 7. On that day, Marshall filed both a motion for enlargement of time to answer and an answer that included DeClemente's counterclaims and crossclaims. ISMIE's Counter. ¶ 12; Marshall's Amend. Answer ¶ 7. He subsequently amended DeClemente's motion for enlargement of time to include a request for relief from default. ISMIE's Countercl. ¶ 12; Marshall's Amend. Answer ¶ 7.

On April 30, 2014, the Court of Common Pleas issued a written order in which it denied DeClemente's motion for an extension of time and relief from default (the "Default Order"). ISMIE's Countercl. ¶ 13; Order, Apr. 30, 2014, Assistive Tech. Med. Equip. Servs., No. 2011-CP-10-08011, 2014 WL 12784431; see Marshall's Amend.

Answer ¶ 8.[1]  The court explained that DeClemente had been hospitalized for some time until May 2012 and found that there was good cause to relieve DeClemente from default throughout his period of hospitalization.  ISMIE's Countercl. ¶ 13; see Marshall's Amend. Answer ¶ 8.  However, the court found that DeClemente had not demonstrated good cause for the period between when he hired Marshall to represent him in May 2012 and when DeClemente filed his answer, counterclaims, and crossclaims on August 10, 2012.  ISMIE's Countercl. ¶ 13; see Marshall's Amend. Answer ¶ 8.  As such, the court entered default judgment against DeClemente; struck DeClemente's answer, counterclaims, and crossclaims; and ordered that a hearing on damages be scheduled. ISMIE's Countercl. ¶ 13; see Marshall's Amend. Answer ¶ 8.  Marshall then moved on behalf of DeClemente for the court to reconsider the Default Order on May 5, 2014, and the Court of Common Pleas denied his motion for reconsideration on May 7, 2014. ISMIE Countercl. ¶ 14; see Marshall's Amend. Answer ¶ 9.

Over Marshall's objections, the court proceeded to a damages hearing on November 1, 2016, which the court adjourned and subsequently reconvened on January

---

[1] In its counterclaims, ISMIE alleges that the Default Order was written by "Judge J.C. Johnson, Jr. of the Court of Common Pleas."  ISMIE's Countercl. ¶ 13.  In responding to this allegation in his amended answer, Marshall states, "The allegations in Paragraph 13 [of ISMIE's counterclaims] are denied as stated, the Order was issued by Judge J.C. Nicholson."  Marshall's Amend. Answer ¶ 8.  The court interprets this as Marshall denying ISMIE's allegation only with regard to the name of the judge who issued the Default Order and not to ISMIE's allegations regarding the substance of the Default Order.  To the extent, if at all, Marshall intended to deny ISMIE's allegation in paragraph thirteen with regard to the substance of the Default Order, the court takes judicial notice of the Default Order as a matter of public record.  See Massey v. Ojaniit, 759 F.3d 343, 347 (4th Cir. 2014) (explaining that, when analyzing a Rule 12(c) motion, the court "need not accept allegations that contradict matters properly subject to judicial notice or by exhibit" (internal quotation marks and citation omitted)).

5, 2017.[2] ISMIE's Countercl. ¶ 15; Marshall's Amend. Answer ¶ 10. On December 21, 2017, the court issued a written order in which it entered judgment and awarded $875,144.00 in damages against DeClemente. ISMIE's Countercl. ¶ 16; Marshall's Amend. Answer ¶ 11; Order J., Assistive Tech. Med. Equip. Servs., No. 2011-CP-10-08011, 2017 WL 6757216. The court then denied Marshall's motion to amend judgment and relieve DeClemente from default on January 28, 2018. ISMIE's Countercl. ¶ 16; Marshall's Amend. Answer ¶ 11.

---

[2] According to the Court of Common Pleas's later order on damages, Marshall objected to going forward with the damages hearing on November 1, 2016, because DeClemente was not present and because Marshall had requested certain documents from one of the witness, which plaintiff's counsel had not yet produced. Order J., Assistive Tech. Med. Equip. Servs., No. 2011-CP-10-08011, 2017 WL 6757216, at *3. The court also explained that there was some confusion over whether DeClemente was seeking a jury trial on the issue of damages, but the court found that he had waived that issue. Id. Ultimately, the court determined that both DeClemente and Marshall had been provided adequate notice of the hearing and decided to go forward as scheduled. Id. However, the court stated that DeClemente would have the opportunity, after the hearing, to supplement the record with additional evidence and, if necessary, request that the hearing be reconvened so that the court could hear from additional witnesses. Id. Accordingly, the court reconvened the damages hearing on January 5, 2017. Id. at *4. During the January 5, 2017 hearing, Marshall objected again to proceeding with the hearing because the plaintiff's counsel had still not provided Marshall with the documents he sought from one of the witnesses. Id. The court then heard arguments from the parties on the relevance of the evidence Marshall sought and whether Marshall's subpoena should be quashed or a protective order issued. Id. After resolving those evidentiary issues, the court proceeded with the damages hearing and heard testimony from DeClemente. Id.

It is not clear why DeClemente was not present when the court initially convened the damages hearing on November 1, 2016. See id. at *3. However, the court notes the Court of Common Pleas's October 27, 2016 travel order, which states that, due to some unrelated criminal cases, DeClemente was not permitted to enter the State of South Carolina except to attend court proceedings. Order Allowing Travel S.C., Oct. 27, 2016, Assistive Tech. Med. Equip. Servs., No. 2011-CP-10-08011. That order permitted DeClemente to enter South Carolina "for a hearing . . . on October 31, 2016," not on November 1, 2016, the day the court actually held the hearing. Id. at 1. The court then filed a second travel order on December 30, 2016, permitting DeClemente's entry into South Carolina for the reconvened damages hearing. See Order Allowing Travel S.C., Jan. 4, 2017, Assistive Tech. Med. Equip. Servs., No. 2011-CP-10-08011.

On March 14, 2018, Marshall filed a notice of appeal on DeClemente's behalf. ISMIE's Countercl. ¶ 17; Marshall's Amend. Answer ¶ 12. On December 23, 2020, the South Carolina Court of Appeals affirmed the Court of Common Pleas's finding that DeClemente had not demonstrated good cause for avoiding default after May 2012 and explained that DeClemente's motion for relief from default was untimely. ISMIE's Countercl. ¶ 18; Marshall's Amend. Answer ¶ 13; <u>Assistive Tech. Med. Equip. Servs., LLC v. Hood & Selander, CPAS, LLC</u>, 2020 WL 7687860 (S.C. Ct. App. Dec. 23, 2020). Marshall then filed a petition for a writ of certiorari to the South Carolina Supreme Court on February 26, 2021, ISMIE's Countercl. ¶ 19; Marshall's Amend. Answer ¶ 14, and the Supreme Court granted certiorari on January 13, 2022, Order, Jan. 13, 2022, <u>Assistive Tech. Med. Equip. Servs., LLC v. Hood & Selander, CPAS, LLC</u>, No. 2021-000038 (S.C. cert. granted Jan. 13, 2022).

**B. The Policy and Marshall's Notice of a Potential Claim**

ISMIE issued Lawyers Professional Liability Policy Number ALA-04-000647-01 (the "Policy") to insure Marshall during a policy period starting on July 10, 2022, and expiring on July 10, 2023 (the "Policy Period"). ISMIE's Countercl. ¶ 20; Marshall's Amend. Answer ¶ 15; ECF Nos. 1-3; 8-11 (copies of the Policy attached to Marshall's complaint and ISMIE's counterclaims). The Policy obligates ISMIE to pay damages and defense expenses on Marshall's behalf that Marshall becomes obligated to pay "as a result of a Claim first made against [Marshall] and reported in writing to [ISMIE] during . . . the Policy Period." ECF No. 1-3 at 2 (emphasis omitted). The Policy also includes a duty to defend Marshall against any covered claim. <u>Id.</u>

The Policy goes on to include certain specific exclusions. See id. 9–10. Most notably for the court's present purposes, Exclusion L states that the Policy "does not apply to any Claim based upon or arising out of . . . any facts or circumstances of which [Marshall] had knowledge as of the effective date of this policy [July 10, 2022] and which could reasonably have been expected to give rise to a Claim." Id. at 9 (emphasis omitted). Additionally, the Policy includes the following language in its General Conditions section on Notice of Potential Claim:

> **2. Notice of Potential Claim**
>
> If during the Policy Period, [Marshall] becomes aware of any facts or circumstances that may reasonably be expected to give rise to a Claim, and written notice is given to [ISMIE] as soon as practicable but in no event later than the last day of the Policy Period [July 10, 2023] of:
>     (a) such facts or circumstances, as well as the reasons for anticipating such a Claim;
>     (b) specific information as to the expected negligent act, error, omission, Personal Injury or Advertising Liability;
>     (c) dates and details of the parties involved; and
>     (d) the possible Damages;
> then any Claim or coverage under this policy arising out of such specific facts or circumstances that is subsequently made against [Marshall] and reported to [ISMIE] shall be deemed first made during the Policy Period as of the date of such notice.

ECF No. 1-3 at 11 (emphasis omitted).

On April 5, 2023, the South Carolina Supreme Court dismissed the writ of certiorari in the ATMES Suit as improvidently granted. Mem. Op. No. 2023-MO-007, Assistive Tech. Med. Equip. Servs., No. 2021-00038, 2024 WL 2784604, at *1. At some point shortly after that, Marshall notified ISMIE of a potential claim against him by DeClemente.³ ISMIE's Countercl. ¶ 26; Marshall's Amend. Answer ¶ 17.

---

³ The parties dispute the exact date when Marshall notified ISMIE of DeClemente's potential claim. ISMIE alleges in its counterclaims that Marshall "attempted to report" the potential claim in May of 2023. ISMIE's Countercl. ¶ 26.

6

### C. The Malpractice Suit

On September 25, 2023, DeClemente filed a new lawsuit against Marshall in the Charleston County Court of Common Pleas, alleging legal malpractice (the "Malpractice Suit"). ISMIE's Countercl. ¶ 27; Marshall's Amend. Answer ¶ 18; DeClemente v. Marshall, No. 2023-CP-10-04708 (Charleston Cnty. Ct. C.P. Sept. 25, 2023). Marshall subsequently demanded that ISMIE defend and indemnify him in the Malpractice Suit. ISMIE's Countercl. ¶ 30; Marshall's Amend. Answer ¶ 20. On October 27, 2023, ISMIE notified Marshall (via a letter emailed from ISMIE's authorized claims representative) that ISMIE was disclaiming any coverage obligation in connection with the Malpractice Suit. ISMIE's Countercl. ¶ 31; Marshall's Amend. Answer ¶ 21; ECF No. 8-13.

### D. Procedural History of this Case

Marshall filed this declaratory judgment action against ISMIE on January 12, 2024. ECF No. 1, Compl. In general, he argues that ISMIE is obligated under the Policy to defend and indemnify him in the Malpractice Suit. See generally id. He brings three causes of action: (1) breach of contract, (2) bad faith, and (3) declaratory judgment. Id. ¶¶ 21–30.

ISMIE answered Marshall's complaint and asserted two counterclaims of its own on February 28, 2024. ECF No. 8, ISMIE's Countercl. In both of its causes of action, ISMIE seeks a declaratory judgment that it is not obligated to provide coverage for

---

Marshall denies this allegation in his amended answer to ISMIE's counterclaims and, instead, contends that he reported the potential claim to ISMIE on April 28, 2023. Marshall's Amend. Answer ¶ 17. The court need not resolve this minor discrepancy at this time because it does not alter the court's conclusion on ISMIE's motion for judgment on the pleadings.

Marshall.[4]  ISMIE's Countercl. ¶¶ 32–54.  Marshall initially answered ISMIE's counterclaims on March 14, 2024, ECF No. 10, and then filed an amended answer on September 12, 2024, ECF No. 27.[5]

On April 10, 2024, ISMIE moved for judgment on the pleadings.  ECF No. 11.  Marshall responded in opposition on May 15, 2024, ECF No. 16, to which ISMIE replied on May 28, 2024, ECF No. 17.  On September 16, 2024, ISMIE filed its motion for leave to file an "amended statement of pertinent facts which are established by the pleadings."  ECF No. 28.  The court then held a hearing on the motion for judgment on the pleadings on September 17, 2024.  ECF No. 29.  As such, both motions are now ripe for the court's review.

## II.  STANDARD

### A.  Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Courts follow "a fairly restrictive standard" in ruling on 12(c) motions, as "hasty or imprudent use of this summary procedure by the courts violates the policy in

---

[4] Both of ISMIE's counterclaims are labeled as seeking declaratory judgment based on Exclusion L in the Policy.  ISMIE's Countercl. ¶¶ 32–54.  However, it seems that only ISMIE's first cause of action is intended to be for declaratory judgment that it is not obligated to provide coverage for Marshall based on Exclusion L, and its second counterclaim is for declaratory judgment that it is not obligated to cover Marshall based on the Notice of Potential Claim section of the Policy.  See id.

[5] Marshall labels his responsive pleadings as a "Reply to Defendant's Counterclaim," ECF No. 10, and an "Amended Reply to Defendant's Counterclaim," ECF No. 17.  The court cites these filings as an "Answer" and "Amended Answer" because that is how the Federal Rules of Civil Procedure refers to these responsive pleadings.  See, e.g., Fed. R. Civ. P. 12(a)(1)(B) ("A party must serve an answer to a counterclaim or crossclaim within 21 days after being served with the pleading that states the counterclaim or crossclaim.").

favor of ensuring to each litigant a full and fair hearing on the merits of his or her claim or defense." 5C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1368 (3d ed. 2011). A Rule 12(c) motion "does not resolve the merits of the plaintiff's claims or any disputed facts." Massey v. Ojaniit, 759 F.3d 343, 353 (4th Cir. 2014).

To resolve a Rule 12(c) motion for judgment on the pleadings, the court may consider the pleadings and exhibits attached thereto, relevant facts obtained from the public record, and exhibits to the motion that are "integral to the complaint and authentic." Id. at 347. Congruent to a motion to dismiss under Rule 12(b)(6), a motion for judgment on the pleadings under Rule 12(c) requires the court to "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." Pa. Nat'l Mut. Cas. Ins. Co. v. Beach Mart, Inc., 932 F.3d 268, 274 (4th Cir. 2019); Mt. Hawley Ins. Co. v. Carriage Hill Assocs. of Charleston, LLC, 2020 WL 5583631, at *1 (D.S.C. Aug. 18, 2020). The grant of a Rule 12(c) motion is proper only when "all material issues can be resolved on the pleadings by the district court; otherwise, a summary judgment motion or full trial is necessary." TRB Mellichamp LLC v. Concrete Supply Co., LLC, 2021 WL 3561177, at *2 (D.S.C. Aug. 11, 2021) (quoting Wright & Miller, supra, § 1368).

### B. Insurance Contracts

Under South Carolina law, "[a]n insurance policy is a contract between the insured and the insurance company, and the terms of the policy are to be construed according to contract law." Auto Owners Ins. Co. v. Rollison, 663 S.E.2d 484, 487 (S.C. 2008). "The cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language." Beaufort Cty. Sch. Dist.

v. United Nat'l Ins. Co., 709 S.E.2d 85, 90 (S.C. Ct. App. 2011) (citing Schulmeyer v. State Farm Fire & Cas. Co., 579 S.E.2d 132, 134 (S.C. 2003)). "If the contract's language is clear and unambiguous, the language alone, understood in its plain, ordinary, and popular sense, determines the contract's force and effect." Id. (citing Schulmeyer, 579 S.E.2d at 134). "However, an insurance contract which is 'in any respect ambiguous or capable of two meanings must be construed in favor of the insured.'" Id. (quoting Reynolds v. Wabash Life Ins. Co., 161 S.E.2d 168, 169 (S.C. 1968)).

### III.   DISCUSSION

Before addressing the merits of ISMIE's motion for judgment on the pleadings, the court will start with a preliminary issue that is now resolved by ISMIE's motion for leave to file. In its motion for judgment on the pleadings, ISMIE initially argued that several of the paragraphs in Marshall's answer to ISMIE's counterclaims were insufficient under Rule 8(b) because they did not clearly admit or deny several of ISMIE's allegations. ECF No. 11-1 at 15–17. Before the hearing, the parties conferred on this issue and came to an agreement on how Marshall's answer could be reworded, and Marshall amended his answer as a result. See Marshall's Amend. Answer. After that, ISMIE filed its motion for leave to file, in which it consented to Marshall filing the amended answer and requested permission to file an "Amended Statement of Pertinent Facts which are Established by the Pleadings." ECF No. 28.

ISMIE's proposed Amended Statement of Pertinent Facts, which it attached to its motion, includes a rearticulation of the facts presented in the parties' pleadings but does not provide any additional argument. See ECF No. 28-1. The court has reviewed this document and grants ISMIE's motion to file it, but this new filing ultimately does not

change the court's conclusion on ISMIE's motion for judgment on the pleadings. Additionally, because ISMIE provided written consent to Marshall's amended answer, Marshall's amended answer is now procedurally permissible, and the court considers it when ruling on ISMIE's motion for judgment on the pleadings. See Fed. R. Civ. P. 15(a)(2) (providing that a party may amend its pleadings with the opposing party's written consent).

Moving to the merits of ISMIE's motion for judgment on the pleadings, its arguments can be divided into three parts. First, ISMIE contends that the court should grant judgment on the pleadings in its favor on one or both of its causes of action and against Marshall on Marshall's breach of contract claim. ECF No. 11-1 at 18–30. Second, ISMIE argues that Marshall's bad faith claim fails as a matter of law. Id. at 30–31. Finally, ISMIE argues Marshall's claim for relief under the South Carolina Uniform Declaratory Judgment Act ("S.C. Declaratory Judgment Act"), S.C. Code Ann. § 15-53-10, et seq., fails as a matter of law. Id. at 31–32. The court will address each of these arguments in turn but does not find any of them persuasive.

### A. ISMIE's Claims for Declaratory Relief and Marshall's Breach of Contract Claim

ISMIE argues that the court should grant judgment on the pleadings and find that it is not obligated to cover Marshall's claim based on two alternative theories. First, ISMIE argues that Marshall's claim is excluded from coverage under the Policy's Exclusion L. ECF No. 11-1 at 18–28. Second, ISMIE argues Marshall's claim cannot be deemed to have arisen during the Policy Period according to the Policy's Notice of Potential Claim section. Id. at 28–30.

### 1. Exclusion L

Exclusion L states as follows: "This policy does not apply to any Claim based upon or arising out of: . . . any facts or circumstances of which any Insured had knowledge as of the effective date of this policy and which could reasonably have been expected to give rise to a Claim." ECF No. 1-3 at 9–10 (emphasis omitted). Courts have considered similar provisions by applying a mixed, two-part subjective/objective test to determine whether coverage is excluded. See Nat'l Specialty Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 2012 WL 1825370, at *3 (D.S.C. May 18, 2012). Thus, to determine whether Exclusion L precludes coverage the court must make the following considerations: "First, the court is to consider whether the insured had actual knowledge of the underlying facts which are the basis of the claim (subjective), and second, would a reasonable insured in possession of such facts have a basis to believe that these facts could constitute a claim (objective)." Id. at *3. In other words, the test calls for examining (1) what facts Marshall knew prior to the beginning of the Policy Period on July 10, 2022, and (2) whether an objectively reasonable attorney with knowledge of those facts would predict that they could give rise to a claim.

As for the first consideration, the parties generally agree that Marshall was aware of the following facts prior to the beginning of the Policy Period on July 10, 2022: (1) Marshall knew that he had an attorney-client relationship with DeClemente; (2) Marshall knew that he had not made any filings in the ATMES Suit prior to August 2012, despite the fact that he became DeClemente's attorney in May 2012; (3) Marshall knew that the Court of Common Pleas found that there was not good cause to vacate DeClemente's default; (4) Marshall knew that the Court of Common Pleas had stricken the answer,

counterclaims, and crossclaims he had filed on DeClemente's behalf; (5) Marshall knew that the Court of Common Pleas ordered that DeClemente pay $875,144.00 in damages as a result of the default; and (6) Marshall knew that the Court of Appeals had affirmed the Court of Common Pleas's judgment. ISMIE's Countercl. ¶¶ 35–44; Marshall's Amend. Answer ¶¶ 25–32. The court also takes judicial notice of the fact that the South Carolina Supreme Court granted certiorari in the ATMES Suit on January 13, 2022, and then dismissed the writ of certiorari on April 5, 2023. See Order, Jan. 13, 2022, supra; Mem. Op. No. 2023-MO-007, supra; see also Massey, 759 F.3d at 353. The dispositive issue is therefore whether a reasonable attorney with knowledge of these facts should have foreseen a claim arising.

Under South Carolina law, when a client suffers an adverse judgment because of his attorney's malpractice and the client then appeals that adverse judgment, the malpractice claim does not accrue until the appeal is finalized. Stokes-Craven Holding Corp. v. Robinson, 787 S.E.2d 485, 493–94 (S.C. 2016). "This position is consistent with the discovery rule as a client either knows or should know that a cause of action arises out of his attorney's alleged malpractice if the appeal is unsuccessful." Id. at 494 (emphasis added). If a client cannot know whether he has a cause of action for attorney malpractice during the pendency of his appeal, it follows that a reasonable attorney may not foresee a malpractice claim during that same period. As such, there is a genuine issue of material fact as to whether a reasonable attorney in Marshall's position would have foreseen that DeClemente could file a claim and thus a factual question as to whether coverage is precluded by Exclusion L. See id.; see also Nat'l Specialty Ins. Co., 2012 WL 1825370, at *4 (finding that the question of whether the reasonable person would

13

have foreseen a claim is normally a question for fact for the jury); Wickersham v. Ford Motor Co., 853 S.E.2d 329, 332 (S.C. 2020) ("In most cases, foreseeability ends up being addressed as a question of fact for the jury."). As such, the court denies ISMIE's motion for judgment on the pleadings with respect to ISMIE's first cause of action. See Massey, 759 F.3d at 353.

### 2. Notice of Potential Claim Section

ISMIE bases its next argument on the Policy's Notice of Potential Claim Section but notes that the court need not reach this issue. ECF No. 11-1 at 28–29. Nevertheless, if the court does reach the issue, ISMIE contends that coverage for Marshall's claim is precluded because the claim arose after the expiration of the Policy Period and cannot be deemed to have arisen during the Policy Period. Id.

Again, the Policy generally provides coverage when "the Insured becomes legally obligated to pay as a result of a Claim first made against the Insured and reported in writing to the Insurer during . . . the Policy Period." ECF No. 1-3 at 2 (emphasis omitted). The Policy Period ran from July 10, 2022, until July 10, 2023. Id. at 1; ISMIE's Countercl. ¶ 20; Marshall's Amend. Answer ¶ 15. DeClemente filed the Malpractice Suit against Marshall on September 25, 2023. ISMIE's Countercl. ¶ 27; Marshall's Amend. Answer ¶ 18. Therefore, ISMIE correctly observes that the Malpractice Suit against Marshall arose after the expiration of the Policy Period.

However, as Marshall notes in his complaint, the Policy's Notice of Potential Claims section indicates that a claim can be deemed to have arisen during the Policy Period "[i]f during the Policy Period, the Insured becomes aware of any facts or circumstances that may reasonably be expected to give rise to a Claim, and written notice

is given to the Insurer." ECF No. 1-3 at 10 (emphasis omitted). To reiterate, Marshall's position is that he first became aware of facts and circumstances that could reasonably be expected to give rise to a claim once the South Carolina Supreme Court dismissed DeClemente's petition for a writ of certiorari on April 5, 2023. Compl. ¶ 17. Further, while the specific date is disputed, the parties appear to agree that Marshall provided ISMIE with written notice of the potential claim in either April or May of 2023, ISMIE's Countercl. ¶ 26; Marshall's Amend. Answer ¶ 17, which would mean he notified ISMIE of the potential claim during the Policy Period, see ECF No. 1-3 at 10.

      ISMIE acknowledges that the Notice of Potential Claim section could require coverage for a claim that is "deemed" to have been made during the Policy Period. ECF No. 11-1 at 29. However, ISMIE argues that this language does not save Marshall's claim for essentially the same reason coverage is precluded under Exclusion L: ISMIE contends that Marshall was aware of facts prior to July 2022, the start of the Policy Period, that should have reasonably alerted him to the claim. Id. at 29–30. In other words, because Marshall knew of facts and circumstances that should "reasonably be expected" to give rise to a claim prior to the Policy Period, ISMIE argues DeClemente's claim against Marshall cannot be deemed to have arisen during the Policy Period. Id.

      For reasons previously articulated, the court agrees with Marshall that there is a genuine issue of material fact as to whether he knew of facts and circumstances prior to the commencement of the Policy Period that could reasonably have alerted him to a claim. Thus, there is a genuine issue of material fact as to whether DeClemente's claim against Marshall can be deemed to have arisen during the Policy Period, and the court

denies ISMIE's motion for judgment on the pleadings accordingly. See Massey, 759 F.3d at 353.

### B. Marshall's Claim for Bad Faith

ISMIE argues that, once the court finds that Marshall is not entitled to coverage under the Policy, the court should similarly grant judgment on the pleadings on Marshall's bad faith claim because entitlement to benefits is an element of a bad faith claim. ECF Nos. 11-1 at 30–31; 17 at 11–12. In response, Marshall argues that "under South Carolina law, a claim for bad faith exists even if the Policy does not provide coverage." ECF No. 16 at 13. He contends that ISMIE "points to no evidence that supports its assertion that its investigation and handling of the claim was in good faith and complied with South Carolina law and the standards in the industry." Id.

To prevail on his bad faith claim, Marshall must ultimately prove (1) the existence of a mutually binding contract of insurance between himself and ISMIE; (2) refusal by ISMIE to pay benefits; (3) resulting from ISMIE's bad faith or unreasonable action in breach of an implied covenant of good faith and fair dealing arising in the contract; (4) causing Marshall damages. See Est. of Taylor v. John Alden Life Ins. Co., 574 F. Supp. 3d 347, 356 (D.S.C. 2021). As explained above, there is a genuine issue of material fact in this case as to whether ISMIE is obligated to cover Marshall's claim. Therefore, the court denies ISMIE's motion for judgment on the pleadings on Marshall's bad faith claim.

### C. Marshall's Claim for Attorney's Fees and Costs

Marshall brings his third cause of action pursuant to the S.C. Declaratory Judgment Act. Compl. ¶ 28. He seeks both a declaration that he is entitled to coverage

under the Policy and his costs and attorney's fees in bringing this declaratory judgment action.  Id. ¶¶ 29–30.

ISMIE argues it is entitled to judgment on the pleadings on Marshall's third cause of action because Marshall bases this cause of action on the S.C. Declaratory Judgment Act, rather than the federal Declaratory Judgment Act, 28 U.S.C. § 2201.  ECF No. 11-1 at 31–32.  ISMIE asserts that the S.C. Declaratory Judgment Act, and specifically the S.C. Declaratory Judgment Act's fee shifting provision, does not apply in federal court because federal courts apply federal procedural law, including the federal Declaratory Judgment Act.  Id.  Beyond that, even if the S.C. Declaratory Judgment Act does apply, ISMIE argues that Marshall is not entitled to attorney's fees under that provision because Marshall has not demonstrated that he is entitled to coverage under the Policy.  Id. at 32; ECF No. 17 at 12.

In response, Marshall argues that the court should not grant judgment on the pleadings on his third cause of action for two reasons.  First, ISMIE has not shown at this stage in the litigation that it was justified in denying Marshall coverage.  ECF No. 16 at 13–14.  Second, the fee shifting provision in the S.C. Declaratory Judgment Act is part of South Carolina's substantive law and is therefore applicable in diversity cases in federal court.  Id.

In general, it is true that declaratory judgment actions in federal court are governed by the federal Declaratory Judgment Act, rather than a state's declaratory judgment act.  See Siron v. Allstate Fire & Cas. Ins. Co., 225 F. Supp. 3d 574, 577 (D.S.C. 2016) ("A state declaratory judgment action removed to federal court invokes the Federal Declaratory Judgment Act.").  However, the fee shifting provision in the S.C.

Declaratory Judgment Act is applicable in federal court even when the action is otherwise governed by the federal Declaratory Judgment Act.  See Canopius U.S. Ins., Inc. v. Sloan, 2013 WL 530318, at *2 & n.3 (D.S.C. Feb. 11, 2013); Security Ins. Co. of Hartford v. Campbell Schneider & Associates, LLC, 481 F. Supp. 2d 496, 499–501 (D.S.C. 2007).

The S.C. Declaratory Judgment Act provides that "the court may make such award of costs as may seem equitable and just."  S.C. Code Ann. § 15-53-100.  Under South Carolina law, an insured is generally entitled to attorney's fees after prevailing in a declaratory judgment action against an insurance company over whether the insurance company is obligated to provide coverage to the insured.  See Security Ins. Co., 481 F. Supp. 2d at 499–02; Hegler v. Gulf Ins. Co., 243 S.E.2d 443, 444 (S.C. 1978).  Because there is a genuine issue of material fact over whether ISMIE is obligated to provide Marshall coverage, the court denies ISMIE's motion for judgment on the pleadings on Marshall's third cause of action for attorney's fees and costs.

## IV.   CONCLUSION

For the reasons set forth above, court **GRANTS** ISMIE's motion for leave to file and **DENIES** ISMIE's motion for judgment on the pleadings.

**AND IT IS SO ORDERED.**

DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**October 15, 2024**
**Charleston, South Carolina**